And we trust we'll keep the cases separate. Yes, we will. Thank you. Let me ask you a housekeeping question on this one. Yes, Your Honor. The red brief at 30 says that the picture you've got in here at 10 was not admitted into evidence and your expert was precluded from testifying about it. How's it in the record? That was not admitted. That's correct, Your Honor. How can you say it was drawn for the jury? I mean, it was drawn at some level for purposes of the jury, but it was never allowed to be shown to the jury. Oh, it was drawn physically in front of the jury in the courtroom as he gave his testimony. But not admitted. Correct, Your Honor. That drawing aside, the documentary evidence in this case shows that the very same evidence… You're finessing that one. That drawing aside, do you concede it shouldn't be in there? No, we don't concede that. It was shown to the jury as part of the record. It was described as he wrote it in front of the jury. And the jury wasn't told to ignore it. Correct. Okay. Ignoring that for now, the evidence in this case, the documentary evidence in this case, the specifications for Mr. Webb's monitors, the MMIC handbook that he used to keep the specifications for the software used in those monitors, the specifications for the DDM monitors, the other documentary evidence shows, undisputedly, that the very same evidence that invalidates Claim 3, or many of the other claims that were invalidated by the jury, invalidates the remaining claims. As an example, Claim 3 requires that you have a video circuit, a memory for storing an identification number in that case, and an identification number that uniquely identifies the display unit, and then also a communication controller for communicating display unit information to a computer. Mondes does not contest that the prior art shows that. The Webb specifications show that. The DDM shows that. All of the evidence that was there is not contested. With respect to, for example, Claim 15 of the 090 patent, that very same evidence that shows storage of a serial number in memory and retrieval of that serial number from memory shows, in addition, that an external computer is controlling the display to retrieve the serial number. And so no reasonable juror could conclude that Claim 3 is invalid and also that Claim 15 there is valid because the same very teaching of control over the display occurs in the very same references. Even accepting that the arguments you make this morning and in your brief are very persuasive, you've got a serious problem here, and it's just the problem of having a black box jury. And we've got lots of different claims here, and the jury found some infringed, some not, some valid, some not. We're not even clear. You've got two arguments of invalidity. There's anticipation and obviousness, and we don't even know, with respect to the claims that the jury found invalid, whether they thought they were anticipated or obvious. So it's really, you've got a hard job here. Numerous experts, they could have believed parts of testimony and not parts of other testimony. It seems like a pretty high barrier for you to have to kind of, for us to try to figure out whether or not there was substantial evidence to support the jury verdict. The precedent in this court with respect to the issue of obviousness says that accepting what the jury did with the factual issues, this court has the ability to look at the issue of obviousness as an issue of law and address it de novo. So this court gets to look at the uncontested documentary evidence that was submitted to the jury. The web patent, for example, shows that the computer controls the display. Every primary reference that was used showed that the computer controlled the display. That was undisputed. No witness contradicted that. No documents contradicted that. Given that, this court can look at that evidence and find that claim 15 of the 090 patent is invalid for being obvious based on that information. Similarly, with respect to claim 15 of the 342 patent, that says that you have to store in the memory information other than the identification number. The very same documents that are there in black and white that are undisputed that show storage of a serial number show storage of other information, a version number, a manufacturer ID, frequency information, those kinds of things. They show up literally in the very same evidence in the very same document. So a reasonable juror looking at that information would not be judging credibility. It's there on the paper. It would be like a juror walking in this room today and accepting that you all are sitting in your chairs but not wearing your robes. The juror could come to that conclusion, but no reasonable person can do that because the physical evidence is to the contrary. I'm simply wrong there. It's a matter of – you guys can see that as a matter of law. With respect to the other claims that deal with a model number that describes a type of a display, it's clear that when you have a reference that shows a serial number, it also has a model number there and additional information. VDDP does that. The web specifications do that. With respect to Claim 88 that Mondes contends has been held invalid, but there was not substantial evidence to do that. With respect to the functional limitation there, VDDP shows in the spec that model number, serial number, display type, frequency settings, things like that were known by persons skilled in the R to be stored in display memory. Web's specifications, not a subject of credibility, but the specifications themselves that say in black and white show storage of serial numbers, model numbers, frequency operating ranges, the adjustment data that's there, and they provide the specifications to cause that information to be input to the computer and read back out at the computer. And so with respect to those claims, it is literally the very same evidence that you can consider and then look at the obviousness determination. Furthermore, here when you look at the prior art and the fact that it does disclose each and every one of these elements of these claims, it's okay for you to look at those references at the obviousness legal level per KSR. And to the extent that it's known that these things would work for their intended purposes, for example, a model number being stored in addition to a serial number or frequency data being stored in addition to a serial number and you could pull that out. You know that that will work for its intended purpose, and KSR tells you as a matter of law that when that occurs, obviousness is presumed absent of showing that somebody skilled in the art couldn't make that happen, and that is simply not the case here. And here, with respect to commercial success, you have claims, for example, Claim 3 of the 090 that are rejected and held invalid, and there was no distinguishing from a commercial success standpoint the elements of those claims. So there's no record of where the nexus for this alleged commercial success might actually tie into the claims that survived. And I think you're entitled to consider that when you all look at the legal issue of obviousness. Similarly, if you look at the 812 family, it's not disputed. The record evidence shows that each and every element of those claims is found in the prior art. For example, this isn't binding on you all, but with respect to the 588 Patent Claim 1, the Board of Patent Appeals and Interferences, now the Trademark Trial and Appeal Board, has ruled that that claim is obvious based separately on Takahashi by itself, and then also based on Webb and the RS-232 spec, which is the very same references that we're talking about here in this proceeding. It's not binding on you, but from a legal determination standpoint, it shows that from an obviousness standpoint, each and every one of those elements is present. You have a pending motion that we haven't acted on yet, correct? Yes, Your Honor. A judicial notice. That's correct, Your Honor. And that was filed with the desire to allow this court to understand the current status of the proceedings before the Patent and Trademark Office. With respect to the 812 claims, Webb teaches all of the elements of the 812 claims, but for the use of a single communication cable. And I think one of you said earlier today that less is always better. So going from multiple cables to one cable would always be better, right? And so using that single cable from Takahashi in Webb would give you a system that meets all the limitations of those claims. Similarly, if you just take the programming from Webb and use that in Takahashi, you have a system that, again, meets all of the limitations of the claims. To the extent that there was a statement about reading data out of memory or reading control data out of memory or sending response confirmation signals, that's shown in the Webb specs. Again, it's not something that's subject to a credibility determination. It's something that's shown in black and white right there for the jurors and the court to read with dated specifications. I'd like to reserve the rest of my time, Your Honor. We will retain the rest of your time, Mr. Black. When you come back up, though, I want you to discuss footnote 13 of the court's order that discusses that item at page 10. May it please the court, I will address my rebuttal to Mr. Brogan and a few very short points in our cross-appeal. Starting with respect to the picture in the brief, Your Honor, what happened at trial was the following. Mr. Webb testified about various things that he had done at various times. He tried to tie it together with various documents and alleging that he had sold certain monitors at certain times which were unavailable for examination. And their whole case on Webb turned on 102-G2. What did he conceive? When did he conceive it? Was it ever reduced to practice? Was it abandoned, suppressed, or concealed? All very intensely factual issues which were resolved. We don't know precisely how it was resolved because we have a black box verdict. That drawing was presented, was drawn in front of the jury by Mr. Webb. In that drawing are certain elements that are described in the patent, like the word communication controller, which appears nowhere in any of Mr. Webb's documents, was written up on the board by Mr. Webb. We call it a foul, Your Honor. Now, when their expert got up to testify that, what is Webb? Webb is what was on the board. And he was going to give an opinion that what was on the board was prior art. We said, wait a second. That was not disclosed in the expert reports. It's never been clear from the expert reports right through to this argument what exactly they claim specifically is the thing that was invented and on what day it was invented. And Judge Ward refused to allow their expert to give an opinion relating to that drawing. They then took a picture of it. They took the picture, and they put it in their JMAL briefing. Why? So that it will be available for this court. It is not evidence. It wasn't demonstrative. It was shown to the jury. We're here on a JMAL motion. We're here on an appeal to overturn a ruling denying JMAL based on a jury that concluded lack of obviousness with respect to certain claims under the clear and convincing standard with disputed expert testimony. The drawing does not help. It is not evidence, and it cannot be considered, and it was inappropriate to put it in the brief. The standard here is to determine whether there is sufficient evidence that a reasonable jury could have found in favor of Mondes. And given all the factual disputes, starting with what the prior art was, starting with obviousness and motivation to combine, starting with the fact that their expert was a hired gun who had testified in a lot of patent cases, had an electrical engineering degree, but he did not have any experience in the monitor industry, and he admitted he was less of an expert than ours during cross-examination. Based on that record, they're simply not entitled to overturn the judge's considered ruling who heard the evidence on JMAL. As to your point with respect to the black box verdict, the plaintiff actually proposed in its jury instructions and jury verdict form that we put next to each claim to ask the jury which prior art references they requested, they relied on, if they found any claim invalid. They opposed that request, and the verdict form went to the jury with a general verdict. Well, is the other side correct that since the jury went one way on certain claims and the other way on other claims that they're inextricably entwined and there's an inherent conflict in going one way on one and one on the other? Not only are they incorrect as a matter of fact, and they're incorrect as a matter of what the ramifications would be even if they were right. Let me say that more clearly. If their real claim was that the jury verdict on Claim 3 and Claim 15, which was dependent on Claim 3, was inconsistent, then they needed to meet the standard for an inconsistent jury verdict and move for a new trial. They never moved for a new trial. Throughout their papers, they asked for JMAL or any alternative new trial, but they never filed a new trial motion in here, and all of that's waived. The only way they can succeed here is that they can show that no reasonable jury could find that the prior art is exactly what they say it was, that the application of the prior art is what they say it was, that their expert was so credible no jury could find him unbelievable, and that our experts were completely incredible. They can't get there. With respect to the – I don't want to get into the pending motion because it is pending, but I do want to say that the one claim that they are asserting – that their motion includes papers that were filed in the PTO back in April and March before the briefs were concluded. In addition, the one board ruling that we have now, the examiners – the three examiners in the reexamination unit sided with us. The board felt differently. They sent it back to the examiners. It's been kicking around the office under a different standard. Maybe it will land here. But the question at trial was, what did their experts say? Did they get over the clear and convincing evidence standard, and they didn't get there. Let me address just a couple brief points on my cross-appeal, unless you have any other questions for me on their appeal. Okay. After criticizing my worthy opponent for not meeting the JMAL standard, I do want to point the court to an issue where I do think the district court erred with respect to the HP license defense. And the reason why there's a difference between our position and their position is the burden of proof. It's always important on these things. They bore the burden of proof of coming forward with evidence, some evidence from which the jury can conclude that the HP monitors in the case were licensed. Well, you had a couple of HP witnesses. The one issue I'd really like to focus on is 2.05C of the license, which says that if there are identical or substantially identical units sold before, then they are not licensed. And the reasoning behind that, we believe, Your Honor, is that if Intellects was selling units of a certain design and they just happened to get a contract with HP, then those HP units wouldn't be licensed. And we believe that was the basis behind the agreement. But in order to meet that, they had to show that nothing that Intellects sold before the HP agreement was substantially identical to what HP was selling. By definition, no one at HP would know that. HP doesn't know what Intellects sold years before. Someone needed to come to trial, and this is a technical inquiry, and compare the monitors and establish that Intellects had never sold a substantially identical unit before they went to HP. There was no technical evidence on that point. The only evidence they cite in their brief is on pages 57 to 58, and the sum total of that is an HP employee making a conclusory statement that they were intended to use their have-made rights. That's not evidence. That's not sufficient evidence. We also have a JMAW issue on willfulness. The jury found willfulness, and the court granted JMAW. Since then, there have been some developments in the law, most particularly the Bard case. Judge Ward felt that he could not consider willfulness in this case because of a notice issue, because the patent claims that the jury found were not invalid had come later in time, and that he felt there wasn't proof of notice. The record, though, as we've laid it out in our brief, was that there was evidence from which the jury could conclude that they were on notice. They had been told about not just this patent family, but that there was a specific application that had been allowed, that the claims were pending, and that things were happening in the patent office, and they decided apparently either not to look at it, which would be reckless behavior, objectively reckless behavior, or they knew about it. The testimony was they had an IP law professor who was running this, that they had looked at the file histories, and the jury was entitled to conclude that there was sufficient notice to Intilux that they were on warning. The judge conflated the 287 standard for notice, which now requires a specific charge of infringement of a claim and a specific product. He conflated that with the willfulness standard, which is a reckless behavior. You can be reckless. You don't have to have actual knowledge of everything. We think because the judge made that error as to the timing point, he didn't consider willfulness more generally, and the case should be sent back down on willfulness to be heard under the new BARD standard. Thank you. Thank you, Mr. Fleck. Mr. Groban. Ron, you had a question about footnote 13. What is that question, Ron? I'm sorry. You want me to point in the record? It's the footnote that talks about the web hand-drawn. Yes, it is. That was not admitted into evidence. It was drawn in front of the jury and shown to the jury without objection by Mondis. The court notes that this drawing was not entered into evidence and was only a demonstrative. Although the testimony given by Mr. Webb in connection with the drawing is evidence, the drawing itself is not evidence. Correct, sir. The court wouldn't let it in. That's correct. I still fail to see how it gets into the record. Gets in? I fail to see how it gets into the record. I mean, did you make an objection and sustain it and offer proof? We did not, Your Honor. Then it's not in here. But the documents, the specifications are in evidence, and the specifications show the storage of the serial numbers, model numbers, and other information. That's not this picture. That's correct. That's correct. But the evidence that was admitted certainly does show the same pages of evidence that were admitted show storage of model numbers, serial numbers, frequency ranges, and adjustment data. The Webb 502 patent, right, which is prior under 102E to both sets of patents, shows that you can adjust a display using the keyboard on your computer. That, for example, with respect to claim 158090, shows without question that the display is being controlled by the computer. There was no substantial evidence that shows that that was not the case with respect to any of the references. With respect to, you know, we only have a limited number here for the black box of references that could be combined to invalidate claim three and the other claims that were invalidated. That would be either the specification evidence from Webb that shows storage of the serial numbers, model numbers, frequency data, things like that, or VDDP, which shows storage of serial number, model number, frequency ranges, things like that. And all of that evidence shows that with respect to claim 158090, the computer is controlling the display. All of that evidence shows with respect to 341, with the 342 patent claim 15, that there's other information beyond the serial numbers stored in memory. It's right there in writing. No reasonable person can look at that and conclude that that wasn't part of the prior art. Similarly, with respect to claim 14 of the 180 patent, it shows you that the model number is there and characteristic information is there. The specifications with respect to the 180 patent claim 23 show that there's a process that's there. It's illustrated in the specification. It says CPU on it. No reasonable jury looking at that could conclude that Mr. Webb's display lacked a CPU. With respect to the offers for sale, it's the contracts that are entered into evidence. That's not a testimony issue. That's a contract that says here's what has to be provided, here's when it has to be provided, and here are the signatures of the parties. I mean that's actual evidence that the jury had the ability to consider and you have the ability to consider when you look at this issue from an obviousness standpoint at the legal issue there. With respect to the willfulness issue, the notice issue, there's no evidence whatsoever that our client had knowledge of the 342 patent. There's circumstantial evidence that it might have had knowledge of a parent, the 180, but not that application. And what they want to do is impose on parties an obligation once given notice of one patent that you go then and investigate the entire portfolio. That's never been the law of this court. And there's no evidence that suggests that that should be the law. Thank you, Mr. Brogan. Mr. Black reserved some time for responding on the cross-appeal. I think the only cross-appeal issue that was commented on was willfulness. It was, Your Honor, and I believe the rest has been covered in the briefs. I just came to collect my pens. Thank you. Thank you very much. Case will be taken under revising. All right.